**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SY VONGSANAN,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>　　　　　　Defendant. | Case No. 1:09-cv-00145-JLT<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR of 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF SY VONGSANAN AND AGAINST DEFENDANT MICHAEL J. ASTRUE |

**BACKGROUND**

Plaintiff Sy Vongsanan ("Plaintiff") seeks judicial review of an administrative decision denying her claim for and Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

**FACTS AND PRIOR PROCEEDINGS**[1]

On April 12, 2006, Plaintiff filed an application for SSI benefits under Title XVI of the Act alleging disability due to physical and mental problems. AR at 116-21. After initial denial of her request for benefits by the Agency, Plaintiff requested a hearing before an Administrative Law Judge

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

("ALJ") and, on August 26, 2008, the ALJ issued a decision denying benefits. Id. at 5-13. Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Id. at 13. On November 24, 2008, the Appeals Council affirmed this decision. Id. at 1-3.

Hearing Testimony

Plaintiff testified she was born on June 10, 1954 (54 at the time of the hearing). AR at 22. She described her education as third grade level. Id. at 23. She stated she had never held a job. Id. She testified she could not read or write in English. Id. at 24. Although she could understand a little English, she needed an interpreter at the hearing and stated she did not understand or speak English well enough to ask someone for directions in that language. Id.

Plaintiff testified she lived with her three children. AR at 23. She described the youngest child as about 4 or 5 years old and the oldest as 15. Id. at 24. She later clarified that the children were her grandchildren and they did not live with her but she looked after them about two days each week. Id. at 30-31.

Initially, Plaintiff indicated that her only physical problem was heart trouble. AR at 31. However, she later described suffering from constant lower back pain which she characterized as very painful. Id. at 32. She stated, however, that she hadn't done anything about her back pain, in terms of treatment or therapy. See id. She stated that she saw a doctor about once a month for her heart problem. Id. Also, she stated that she received mental health treatment about twice a month. Id.

Plaintiff testified she could lift and carry about five pounds. AR at 32. She estimated that she could stand and walk about five minutes each before needing to sit down. Id. She estimated she could sit for about ten minutes before having to move. Id. She stated she could focus attention on one thing for up to ten minutes at a time. Id. at 33. She stated she didn't visit other people but if she happened to meet strangers she got along fine with them. Id.

Plaintiff testified she could use utensils, dress and bathe herself, comb her hair and was capable of preparing simple meals, which she did approximately twice a day. AR at 24, 26. Conversely, she stated she didn't do dishes because her hands were too weak. Id. at 26. She also stated she didn't empty the trash, sweep or vacuum, mop or wash windows, clean the kitchen or

1  perform yard work. Id. at 26-28. She stated the "kids" made her bed for her but also stated she
2  could make it herself if necessary. Id. at 25.
3       Plaintiff stated she had no driver's license but if she needed to go somewhere her adult
4  daughter would take her. AR at 24. She stated that she did go to the grocery store but had done so
5  only about five times in the previous six months and the last time was about two months before the
6  hearing. Id. at 29.
7       At the conclusion of the hearing, Plaintiff's counsel asked the ALJ to take note of treatment
8  records showing that Plaintiff suffered from severe mental impairments, in particular, depressive
9  disorder and Post-Traumatic Stress Disorder ("PTSD"). AR at 38. The ALJ indicated that he would
10 consider the evidence. Id.
11      Cheryl Chandler, a vocational expert ("VE"), testified that Plaintiff had no past relevant
12 work. AR at 34. For each hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
13 education and work experience (or lack thereof). In the first hypothetical, he described a person
14 capable of carrying out one to two-step, simple job instructions who could relate and interact with
15 co-workers, supervisors and the public but who was unable to carry out a variety of technical and
16 complex instructions. Id. at 35. The VE opined that such a person could perform the entire range of
17 unskilled work if there were no language issues.[2] Id. Factoring in language difficulties, the VE
18 opined that such a person could still perform approximately 50 percent of unskilled work. Id. at 35-
19 36. As examples she cited the jobs of vehicle cleaner, hand packager and material handler. Id. at 36.
20      In a second hypothetical, the ALJ described a person with the same restrictions listed in
21 hypothetical one but who was further restricted to lifting and carrying five pounds, standing or
22 walking five minutes at a time, sitting for no more than ten minutes at a time and maintaining
23 concentration on one task for no more than ten minutes. AR at 36. The VE opined that with these
24 additional restrictions, such a person could not work. Id.
25      Relevant Medical Evidence
26      Because Plaintiff's sole claim of error concerns the ALJ's consideration of her severe mental

---

[2] The Plaintiff, who was Laotian, testified she had difficulty understanding and communicating in English and could not read or write in English. See AR at 25-26, 195-196.

3

impairment, (see Doc. 13 at 4-6), the Court will recount only that evidence in the record which pertains to Plaintiff's mental status.

Psychiatrist Dr. Ekram Michiel, a consultative examiner for the California Department of Social Services, examined Plaintiff in June 2006. He recounted that Plaintiff told him that she had been sad for the previous four-to-five years since her husband left her. AR at 195. She told Dr. Michiel that she didn't sleep well and angered easily. Id. She told him also that she saw ghosts of dead people. Id. She reported to Dr. Michiel that she avoided people and, essentially, was inactive during the day. Id. She told him that she had no hobbies or activities and that if she needed to go somewhere her children would take her. Id. at 196. Also, Plaintiff reported that she had never worked. Id.

Dr. Michiel noted that Plaintiff had no past history of hospitalizations for psychological problems. AR at 195. He described Plaintiff as well groomed, with a normal gait and posture. Id. at 196. He recorded no involuntary movements or mannerisms and described her body movements as normal. Id. He described her eye contact as fair. Id. Dr. Michiel also found Plaintiff's speech to be normal and stated that she seemed oriented to place with normal thought processes (goal directed and not delusional). Id. at 196-97. He characterized her mood as depressed, but noted that she denied suicidal ideation. Id. at 197.

Dr. Michiel diagnosed Plaintiff with depressive disorder. AR at 197. He also noted a history of high blood pressure and hypercholesterolemia. Id. He believed that her health condition was a stressor. Id. He recorded a Global Functioning and Assessment ("GAF") score of 60.[3] Id. Nevertheless, Dr. Michiel opined that Plaintiff could maintain attention and concentration and carry out simple one and two-step job instructions. AR at 197. He further opined that Plaintiff could relate and interact with co-workers, supervisors and the general public. Id. Dr. Michiel did not believe that Plaintiff could carry out technical or complex job instructions. Id.

Treatment notes in 2006 and 2007 from psychiatrist Dr. Maximo Paraynoindicate that he

---

[3] A person with a GAF score of 60 is described in the Diagnostic and Statistical Manual of Mental Disorders, 4th ed. (2000) ("DSM-IV"), as someone with moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV at 34.

4

diagnosed Plaintiff with major depressive disorder and PTSD. AR at 222-31. In these notes, Dr. Parayno recorded Plaintiff's affect as "blunted" and her mood as "depressed." Id. He described Plaintiff as forgetful with "poor" memory and concentration. Id. Dr. Parayno noted no suicidal ideation and described Plaintiff's capacity for abstract thought as concrete. Id. The records indicated that he treated Plaintiff for her impairments with medications, including Seroquel, Wellbutrin and Efexor. Id.

Dr. S.V. Reddy, a non-examining consultant, reviewed Plaintiff's medical records and filed a report in March, 2007. AR at 217-18. He agreed with Dr. Michiel's conclusions about Plaintiff's mental state. Id.

In August 2006, Dr. Archimedes Garcia, a non-examining expert with the Social Security Administration, reviewed Plaintiff's mental health records and provided a Psychiatric Review Technique Form and a Mental Residual Functional Capacity ("RFC") Assessment. AR at 203-13, 214-16. Dr. Garcia agreed that Plaintiff suffered from depressive disorder. Id. at 203, 206. He found Plaintiff to be "moderately limited" in her ability to understand, remember and carry out detailed job instructions, but concluded that she was "not significantly limited" in all other areas of cognitive ability, including her ability to understand and remember very short and simple instructions and her ability to maintain attention and concentration for extended periods. Id. at 214-15.

Further, Dr. Garcia found Plaintiff to be "mildly" restricted in her ability to conduct daily living activities, to maintain social functioning and to maintain persistence, concentration and pace. AR at 211. He concluded that Plaintiff was capable of performing simple repetitive tasks and could adapt and relate to coworkers and supervisors. Id. at 216.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. In this five-step process, the ALJ determined first that Plaintiff had not engaged in substantial gainful activity since the date of her application for SSI benefits of April 12, 2006. AR at 10. Second, at Step Two he found that Plaintiff had a severe impairment, namely, depressive disorder. Id. However, in the third step of his evaluation, the ALJ determined that this impairment, or a combination of impairments, did not meet or exceed the level required under Agency guidelines for

1 presumed disability.  Id. at 21.

2     In the fourth step of his analysis, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, carry out one or two step simple instructions, and relate and interact with coworkers, supervisors and the general public.  AR at 11.  He determined also that she was unable to carry out an extensive variety of technical and/or complex instructions.  Id.  The ALJ noted that Plaintiff had no past relevant work (Step 4) but, based on his RFC assessment and the testimony of the VE, concluded that Plaintiff retained the ability to perform other work in the national economy (Step 5).  Id. at 12.  As a result, the ALJ determined that Plaintiff was not disabled as defined by the Act.  Id. at 13.

## SCOPE OF REVIEW

    Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

    In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since she filed for SSI benefits on April 12, 2006; (2) had a medically determinable severe impairment (depressive disorder); (3) did not have an impairment which met or equaled one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) had no past relevant work; and (5) retained the RFC to perform work related activities. AR at 10-12. The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act. Id. at 13.

Plaintiff challenges the ALJ's determination at Step 5 of the sequential evaluation process, where an individual's ability to perform work is assessed based on her RFC. In particular, she alleges that the ALJ failed to credit or even consider the opinion of her treating psychiatrist, Dr. Parayno. (Doc. 13 at 4-6).

## DISCUSSION

### The ALJ's Failure to Discuss Dr. Parayno's Findings Warrants Remand

Plaintiff contends that the ALJ failed to address Dr. Parayno's treatment records and assessments. (Doc. 13 at 4). He contends this failure is reversible error and requests that the Court remand this matter back to the Agency so that the ALJ can reassess the RFC finding in light of Dr. Parayno's findings. (Id. at 6).

Defendant contends that "Plaintiff has not adequately explained how the evidence [from Dr. Parayno's notes] was inconsistent with the RFC limitation" adopted by the ALJ. In particular,

---

[4] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

1  Defendant argues that Dr. Parayno offered no opinion as to Plaintiff's functional limitations and,
2  thus, "there was no medical opinion for the ALJ to specifically accept or reject." (Doc. 14 at 4).  He
3  asserts that the ALJ's decision was based on substantial evidence in the record and should be
4  affirmed.  (Id. at 5).

5  Though Dr. Paryano's treatment notes are of poor legibility, it is clear that he diagnosed
6  Plaintiff with depressive disorder and PTSD.  AR at 222-31.  In addition, he characterized Plaintiff
7  as "forgetful" and checked lines on the treatment forms describing her affect as "blunted" and her
8  memory and concentration as "poor."  Id.

9  The opinions and conclusions of a treating physician are entitled to significant weight and, if
10 contradicted by evidence from other sources, may only be discounted by the ALJ with specific and
11 legitimate reasons based on substantial evidence in the record.  See Lester v. Chater, 81 F.3d 821,
12 830-31; Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  This burden can be met "by
13 setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his
14 interpretation thereof, and making findings."  Magallanes, 881 F.2d at 751.  In sum, "[t]he ALJ must
15 do more than offer his conclusions.  He must set forth his own interpretations and explain why they,
16 rather than the doctors', are correct."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

17 In his decision, the ALJ did not discuss or address Dr. Parayno's treatment notes. Instead, he
18 stated that his determination that Plaintiff could perform work and was not disabled was predicated
19 on "the opinion of the board-certified psychiatric consultative examiner," and asserted that "[t]here is
20 no medical source statement from any treating source to support any further limitations."  AR at 11.
21 The Court disagrees.[5]  Dr. Parayno's findings seem to differ on one important point from those of the

---

[5]Although Respondent is correct, that Dr. Parayno did not provide a "medical source opinion," the failure to provide such a statement does "not make the [medical] report incomplete." 20 CFR 416.913(b)(6). Instead, the ALJ is to consider medical reports that include information such as, (1) Medical history; (2) Clinical findings (such as the results of physical or mental status examinations); (3) Laboratory findings (such as blood pressure, X-rays); (4) Diagnosis (statement of disease or injury based on its signs and symptoms); (5) Treatment prescribed with response, and prognosis; and (6) A statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings on the factors under paragraphs (b)(1) through (b)(5) of this section (except in statutory blindness claims). Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete. See § 416.927."

Notably, 20 CFR § 416.927(b) indicates, "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  Likewise, "Medical opinions are statements from physicians

examining and non-examining consultants.  Whereas, Dr. Michiel (the examining consultant) and Dr. Garcia (the non-examining consultant) concluded that Plaintiff's "severe" impairment (depressive disorder) produced virtually no limitations on her ability to maintain concentration, persistent and pace for extended periods, or understand and remember simple instructions, see AR at 197, 211, 214, 216, Dr. Parayno continually described Plaintiff as "forgetful" and consistently characterized her memory and concentration as "poor."  See id. at 222-31.  The ALJ's opinion utterly fails to address this discrepancy.  At a minimum, the difference between the conclusions of the treating source, Dr. Parayno, and the conclusions of Drs. Michiel and Garcia deserve some explanation.  Instead, the ALJ completely failed to address the medical notes of Dr. Parayno and asserted, incorrectly, that no evidence from a treating source was in conflict with the opinions of the examining and non-examining experts.  This assertion, without more, is insufficient.

The Court notes that Dr. Parayno's treatment notes, to the extent they are discernible, provide no supporting clinical findings.  This may ultimately provide a basis for rejecting them.  See Magallanes, 881 F.2d at 751 (noting that a brief and conclusory form opinion which lacks clinical findings is a legitimate reason to reject a treating physician's conclusion).  Here, however, the ALJ failed to even discuss, let alone proffer reasons for rejecting, Dr. Parayno's findings.  This was error.

Defendant argues that Dr. Parayno's notes rendered no conclusion on Plaintiff's ability to perform work and, thus, there was no opinion to discount.  While it is true that Dr. Parayno made no such conclusion, his findings concerning Plaintiff's cognitive abilities regarding memory and concentration (poor) diverge substantively from the opinions of Drs. Michiel and Garcia, who found virtually no or only a mild restriction.   In assessing a Plaintiff's claim of disability, it is the ALJ's duty to consider and weigh all the evidence in the record.  See Jones, 760 F.2d at 995 (holding that it is the ALJ's duty to consider all the evidence, both supporting and detracting, in assessing the Commissioner's decision).   At a minimum, the ALJ should have explained why he believed Dr.

---

and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 CFR § 416.927(a)(2).  Finally, 20 CFR § 416.927(c) reads, "After we review all of the evidence relevant to your claim, including medical opinions, we make findings about what the evidence shows."  Thus, Respondent's argument that the ALJ was not required to consider the treatment notes of Dr. Parayno is contrary to legal authority.

1  Parayno's findings were compatible with the conclusions of Drs. Michiel and Garcia, or,
2  alternatively. why he  adopted the conclusions  of the consultants and discounted the findings of the
3  treating psychiatrist.  20 CFR § 416.927(c)(2) ["If any of the evidence in your case record, including
4  any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will
5  weigh all of the evidence and see whether we can decide whether you are disabled based on the
6  evidence we have."] Because the ALJ did not do this, the matter must be remanded for further
7  consideration.  Upon remand the ALJ should consider whether supplementation of the record
8  regarding Dr. Parayno's findings is necessary.  See 20 C.F.R. §§ 404.1512(e) and 416.912(e); Mayes
9  v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001) (noting the ALJ's duty to supplement the record if
10 evidence is ambiguous and/or incomplete).

11      By remanding this case, the Court does not comment on the ALJ's ultimate conclusion that
12 Plaintiff was not disabled.  Instead, the Court notes the discrepancies in the opinions of the
13 consultants relied upon by the ALJ and the treating psychiatrist's findings.  In light of the fact that all
14 experts found that Plaintiff suffered from depressive disorder and, given the ALJ's determination
15 that this impairment was "severe," the ALJ's failure to discuss this discrepancy was error.  This
16 failure is more pronounced in light of the response given by the VE to the alternative hypothetical.
17 The VE opined that a person like Plaintiff, who was restricted in her ability to sustain concentration
18 for more than ten minutes at a time, was incapable of full-time work.  See AR at 36.

## CONCLUSION

20     Based on the foregoing, the case is HEREBY REMANDED to the Secretary pursuant to 42
21 U.S.C. § 405(g) for further proceedings consistent with this decision. The Clerk of Court IS
22 DIRECTED to enter judgment in favor of Plaintiff Sy Vongsanan and against Defendant Michael J.
23 Astrue, Commissioner of Social Security.
24 IT IS SO ORDERED.
25 Dated:   **April 21, 2010**              **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE